Good morning. If it pleases the Court, I'm Steve Wallin. I'm the attorney for Mr. Brooks. And if I'd like to focus on the Confrontation Clause issue, if it pleases the Court, and I think the other issues are adequately brief. Obviously, the main issue is whether the Davis primary purpose test is met. But I want to start by saying what I see is at stake here and what I want you to – what you want to avoid, which is a situation where the case agent can testify for all kinds of people, as long as they were on the phone with him telling him what they were doing. You could – you don't want to have a ruling which allows an investigation with months of stakeouts and months of tales and months of surveillances where the case agent can say, well, on April 3rd, Agent Smith was on the phone with me, told me about the surveillance, told me he saw the suspect do this, that, and the other thing. And on May 3rd, Agent Jones was on the phone with me in real time, told me he was taking photographs of the defendant, the suspect, and here's the photographs he took, okay? And on June 3rd, Agent Peters, he was on the phone with me, told me he was doing a trash run, seized certain items, and he put them in evidence, and I see – here they are. That's what you want to avoid, and I'm afraid we're going to be doing that if we let the government prevail in this particular case. The government – the government doesn't really address the primary purpose test per se. What they do is they – they make a couple of claims that essentially say they don't have to. First, they claim that in essence I waived the Confrontation Clause issue by waiting to object until the exhibits were offered, even though what I did was exactly what the defense did in the Fifth Circuit's Jackson case. The issue is always whether the objection was specific enough and clear enough in context to allow it. They didn't argue that plain error applied here. So even if you had waived it, haven't they waived it in their opening brief by – or in their answering brief by not arguing that plain error applied instead of harmless error? If that's the Court's position, I'll go with that. Let me ask you about that, because as I read the government's brief, I searched long and hard for the word harmless on this Confrontation Clause issue. I would think – I was a former prosecutor myself. You always expect to see that in the brief. I didn't see that in this brief. I didn't see them arguing harmless error. I didn't see them arguing harmless error or that you failed to object properly at trial. I don't think they argued either one. I think with the respect – do you want me to address harmless error, Your Honor? I would, because I think that, you know, assume the following, that assume that they didn't raise the harmless error in their brief, and you saw there was a request for supplemental brief in your case, and thank you for your supplemental brief, where the Court was looking for assistance on what to do in this odd situation where the government doesn't raise a harmless error question, but there were other counts in this case that may be harmless anyway. So question 3 in the supplemental briefing was on that question. Can you address that question? Yes, Your Honor. The reason why it's not harmless is because the government took count 4, which was the exhibits directly to count 4, but then they used that to bootstrap and as evidence for my client's participation in the conspiracy in their closing argument. The – in the government's closing on excerpts of record, page 354, the government said, line 17 through 21, they said the November 9th mailing was when Mr. Brooks joined the conspiracy. Ultimately, ladies and gentlemen, the defendant joined this conspiracy after the police stop of Burke and Wilson. He became Williams's new worker. New place, new workers. He mailed the November 9th parcel and was assisting in operations on November 17th, 2011. So they're hooking that. They're hooking that. That's evidence as far as their argument to the jury. And, you know, one of the things that – one of the things is that Mr. Brooks and Mr. Williams, the head of the – Williams was the head of the DTO. They'd been schoolboy friends years earlier. They were providing an innocent explanation for Mr. Brooks's presence on November 17th when all the arrests went down and a large quantity of marijuana was found. But he had a gun. And are you really arguing that there was not enough evidence that he was part of this one day at the post office with the mailing? I think that because – I think that's something the jury had a right to decide because my client – this conspiracy had been going on for months and months and months. My client doesn't show up until a few days before November the 9th. And my client and Mr. Williams were – they were old friends from their school days. It is, in fact, conceivable that he went over – lots of people in Arizona carry guns, and, of course, my client wasn't supposed to carry a gun because he was a – a – No, we're not going to take judicial notice of that. But he had a gun. He had all this money. He had rented the car. He was living in the house. I mean, there was a lot of evidence that he was part of this conspiracy aside from the one day. There was some evidence. But the prosecutor argued that the November 9th mailing undercut any argument that my client was only there because he was a friend of – of Mr. Williams. Defense counsel makes two very interesting arguments about his clients. He tries to say that in some fashion maybe he just arrived there November 17th at the Phoenix apartment. Somehow he just arrived there and all of a sudden discovers there's a big marijuana operation going on that he was going to – maybe he was trying to leave. And then he goes on and he says, Innocent visit. You heard testimony on the stand that on November 9th, eight days earlier, this is the defendant who was going back and forth to that location. You heard testimony on the stand that that location had minimal furniture. It was a pack-and-wrap operation. If there had to be in some fashion some innocence at that point in time, it was gone by November 9th to see what was going on there, of course. You know what was going on there and what was happening. And, of course, it's not even that. The reality is he gets up, gets dressed up, and he's ready to go to do what? Deliver parcels that day, November 9th, in Glendale and Scottsdale. So he's clearly using – he's clearly using what happened on November 9th as evidence to counteract the argument that I had made. And there's one of the cases I cited to you in my brief that says that that's a problem for harmless error analysis. So I think that's – I don't – there was strong evidence. There was evidence, and it might well be, but you can't – they've got to prove beyond a reasonable doubt for harmless error analysis in a constitutional issue like this. So – and I don't think they can. But, counsel, the Ninth Circuit model instructions require the jury to focus on each count individually. You know, it makes it clear that unless this is an unusual case and that wasn't given, that model instruction, each count has to be evaluated on its own. And as Judge Friedland has asked in her questions, the jury did convict on counts 1, 3, and 4, including, I believe, that later date in November. So how do we look at that later date in November for which the defendant was convicted and then look at count 1, the conspiracy, and not find that this was harmless? You know, even if there were no evidence on the 9th of the mailing that day, how can we look at the jury's verdict as to that last count in November and not find it harmless as to counts 1 and 3 or 4? I forget what number it is. Well, as I said, they waved it over. They waved the issue. But the problem is that the government hooked those things together. The government said this is evidence of the – of his membership in the conspiracy. That's when he joined the conspiracy. The counts are different. The counts have to be considered separately. But what he did on November 9th, the jury is perfectly – it's perfectly appropriate for the jury to consider what he did on November 9th in reaching their verdict on the other two counts. But I think what Judge Owens is saying is if they convicted, which they did, of possession with intent to distribute on November 17th, then doesn't that support the conspiracy conviction without respect to November 9th? Yes. But the – as I said, that goes back to the innocent presence argument, which the government used the November 9th incident to counteract and contradict. But I'm just not sure you need that. I mean, he could have shown up after November 9th and still been part of the conspiracy by November 17th, right? Counsel, was there any – A lot of things – I'm sorry. I'm sorry. To clarify the question, was there any evidence in the record of your client's involvement in the conspiracy between the 9th and the 17th? I don't – if I'm – if I'm recalling correctly, there was not. Now, I'm not going to swear to that, but if I'm recalling correctly, nothing really happened between the 9th and the 17th, if I'm recalling correctly. Could I ask you a question about the statement you've challenged for November 9th? Do we know whether the statement that this is the tracking number was made in real time in the same phone conversation where they said, I see him enter the post office? I'm sorry, Your Honor. I got distracted by the red light. Can you ask the question again? So there are two parts of the statement that you've challenged as a confrontation clause violation. The first part was, we see Mr. Brooks entering the post office in real time on the phone. We think they say that. That's what it sounds like from the trial testimony. The second part is, here's the box that he sent and here's the tracking number. Do we know whether that part was in real time, too, as he had just handed over the box, or did that part of the conversation happen later? Do we know? There's – remember, there's two different post offices. Right. No, I'm talking about the first post office. Okay. So we're talking about Exhibits 6A through 6N, then, the pictures of the package that was seized. The one that actually was opened and had drugs inside. Right. Right. Is that the Glendale? Pardon me, Your Honor? Is that Glendale? That's Glendale, yes, sir. Glendale Arrowhead. What happened was that the inspector, Postal Inspector Agster, used the information that had been given to him to go and – that's what he used to go and obtain that I have to review it, but if I recall correctly, he then went there and essentially they said, this is the box that guy mailed, and so he takes it. Right. I'm wondering whether when they said, this is the box, that was part of the initial phone call where they also said, here, we're watching him in real time, he just entered the post office, and then they would maybe say, and here's the box with this tracking number, or whether they said the tracking number part later? Well, the tracking number – the tracking number enters into, if I recall correctly, the incident at the Scottsdale post office later where he has to go and take the tracking number and match it up with the video. Okay. So whether they mention a tracking number or not, the part where they say, this is the box that he mailed, was that done in the same phone call or later? Do we know that for the record? No. My recollection of the testimony is that was when – that was later after he gets off the phone with him, he goes in there after the suspect had left the post office. He then – he's on the phone with him while the suspect's in the post office, and they kind of set the package aside. And then after the suspect leaves the post office, he goes in there, here's the – here's the parcel, inspector, okay, and he takes it. And then he takes it and opens it, and we get the photographs. All right. Thank you very much, counsel. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Mark Kanovich on behalf of the United States from the District of Arizona. The government very much appreciates the opportunity that the Court gave to submit supplemental briefing. As the Court has pointed out in questioning, the argument was not made carefully in the opening – in the answering brief regarding the harmlessness of the error. For the Court's reference on page 33, we did note that confrontation clause violations are subject to a harmless error argument. And the factual statement, as the Court has already pointed out better than I could even, there was overwhelming evidence against this individual regarding counts 1 and 3 for certain. And there were far more pieces of evidence against him for count 4 as well, not just the photographs, which, to be clear, that's the only objection that was made at trial. But you've waived that, right? I mean, I don't see anything in your answering brief that said they didn't make this objection and said we should be under a plain error standard instead of a harmless error standard. To be fair, Your Honor, I believe that in their opening brief, their objections seemed to be to the admission of the photographs. And that's what they objected to at trial, was the admission of the photographs. If the Court looks at page 120, it addresses Your Honor's question earlier, too, as to whether or not it was contemporaneous. It appears that it was contemporaneous. It's not terribly clear. But on SCR page 120, counsel, I want to ask you, you just said something. You said that the brief, as you read it, the objection was to the exhibits and not to the testimony. Did I hear that correctly? Yes. I'm just looking at the table of contents in the defendant's brief, and the table of contents at number, I guess it's number 2 under issues presented for review, the admission of trial exhibits 6A through 6N and 45A and B, as well as associated testimony. So what, it says right there they were objecting to the associated testimony. That's true, Your Honor, but the focus and the objection at trial was made to the testimony or was made to the exhibits. But you could have argued that in your answering brief, and you didn't. This is true. This is true. I believe we did point out, though, that the objections were not made to the detective's testimony, but to the inspector's testimony. I don't think you did that until your supplemental brief. I believe that we did, but in any event, we're very thankful for the opportunity to have submitted the supplemental briefing. And I think that the Court, in doing that, solved any of the trouble that Gonzalez-Flores points out may be a problem this Court can't affirm for any reason, and there's no overwhelming evidence as to Counts 1 and Counts 3. But not Count 4, right? Not Count 4, but there's a lot of other evidence about his involvement in the conspiracy on the 9th that isn't just related to those photographs. So the Court's view is that the evidence is not in the 9th, but it's in the 9th. But that wouldn't get us possession with intent to distribute on the 9th. Not for Count 4. If the Court believes that there was a Crawford violation as to that testimony, that's correct. There are a couple of reasons why the photographs could still have been admitted, because the testimony itself. Right. I'm not worried about the photographs, but if we assume the testimony. If it's just the testimony itself, and assuming a proper objection had been made or assuming it's been waived by the government, then we can see that Count 4 would  be a reasonable doubt. And the fact that he drove 20 miles and he was seen driving 20 miles and he was tracked driving 20 miles, and Judge Schroeder is well aware of the distances between these things, Phoenix and Glendale, there's no reason to be driving 20 miles to a post office. And then he's driving to another post office in Scottsdale to deliver another package, and he was seen carrying a package that looks like the other packages that were found at that place. So there's lots of evidence, but probably not evidence beyond a reasonable doubt without the photographs. So let's talk about whether there really was an error then. Okay. So do you really contend that the primary purpose here wasn't investigative? Not that it wasn't investigative, Your Honor, but as the defendant has conceded and as we claim as well, there's not a clear case on this where you have someone on the phone contemporaneously discussing things. It's not the case, as the defendant has claimed, that this is one person who's testifying as to all of these other things that happened. The postal inspector who was on the stand was the person who took the photographs of the package that had been seized. The actual testimony regarding the tracking number, as Your Honor has rightly put a problematic. The government concedes that. But that wasn't objected to at the time. Right. But let's assume you waived the problem of the objection. So let's talk about, was that testimony about the tracking number testimonial? That is something that hasn't been addressed in case law before, and it's – it would have been a best practice, certainly, to put the person on the stand to testify about that. But it's tricky because the tracking number itself isn't something that's created for purposes of trial. The tracking number has a business records purpose. But saying this is the box that Mr. Brooks just brought in is a bit of evidence that connects him to the drugs that are later found in the box. And without that, without knowing that that's the same box he brought in, we have a gap. We have a gap, but it's more akin to a gap in the chain of custody, which goes to the weight and not the admissibility of the evidence. But hasn't the Supreme Court said that if you're going to put on chain of custody evidence, you have to actually bring the people in? Yes, Your Honor. So I'm conceding that it would have been the best practice to do that. And certainly in the future, I think that will be our recommendation to the attorneys in the office that make sure there aren't those sorts of gaps. It was overlooked by the parties at trial. And you had the person who took the photographs on the stand testifying about them. There were a lot of connections between the package that was seized and the pictures that were taken and all the other packaging material that was found at the stash house. So they probably could have left out this bit of testimony, but they didn't. They didn't, but at the time that it was made, it wasn't objected to either. So that's one of the reasons why. But, Counsel, I think we're kind of going to end this loop here, because then Judge Frieden's going to say, well, you didn't argue harmless error. We've seen this before. So I guess, Counsel, with your remaining time, and I don't want to cut into questions Judge Schroeder has, but question three in the supplemental briefing was, what do we do in this situation? So I think it's your position, as I think you laid out in your brief, I thought, fairly clearly, that even if we throw out count, I'll make sure it's count four, even though the dates are backwards, okay, well, that's another charging practice which you guys can work on. But you still have counts one and three, and you're saying that under that standard, which is a very high standard, Pineda, you would agree that's a very high standard, you're saying no matter what happened, those two counts are solid in your view. Morales, I believe, right? Pineda. Yes, I apologize. Yes, Morales. Okay. That doesn't get us out of reviewing count four, though, right, because we have decided that, I think there's a case, DeBright, from a non-bond case from 1984 from this Court, saying that even if you have concurrent sentences and the charge and the conviction that's being challenged doesn't make a difference to the sentence because of concurrent sentences, we still have to review it. Is that correct? That's fine, Your Honor. And we can see that if this Court is going the way it seems clear that it's going, not to replay the sequel again, that count four would not survive Morales. And then, for example, I guess from the other two issues that are raised by the defendant,  stated that they were adequately addressed in the briefs, it's clear that Pineda-Moreno does control, Your Honor. So we would agree with you that Pineda controls and that the government is required to win, even if this panel believes that it's wrongly decided, it's still controlling. And then the defendant is absolutely, at least, an average participant in this conspiracy given the $1,800 he had in his pocket, the fact that he is admittedly a longtime friend of the leader organizer, he was living in his house, the gun, as you pointed out, lots and lots of evidence against this person to at least give him that. And he also obstructed justice as part of this conspiracy. He was given that plus two enhancement. So for all of those reasons, Your Honors, we would beg the court to forgive us for the lack of specificity and thoroughness in the original brief and, again, appreciate the opportunity to have submitted a supplemental briefing in this matter. Thank you, counsel. The matter is submitted.
judges: SCHROEDER, OWENS, FRIEDLAND